UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

McDOWELL RESEARCH CORPORATION,

                        Plaintiff,              08-CV-6499

          v.                                  **DECISION**
                                                  **and ORDER**

TACTICAL SUPPORT EQUIPMENT, INC.,

                        Defendant.
_____

## INTRODUCTION

Plaintiff McDowell Research Corporation ("McDowell"), brought this action in New York State Supreme Court, Wayne County seeking damages against defendant and counterclaimant Tactical Support Equipment, Inc. ("TSE"), for TSE's alleged breach of contract. By Notice dated November 5, 2008, TSE removed this action to federal court on grounds of diversity jurisdiction. Thereafter, TSE filed an answer and counterclaim against McDowell alleging nine causes of action. Less than one month later, McDowell filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) of TSE's Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth counterclaims. On the date its opposition to McDowell's motion to dismiss was due, TSE filed an Amended Answer and Counterclaim ("Am. Counterclaim") pursuant to Fed.R.Civ.P 15(a)(1).[1] In its Am. Counterclaim, TSE has withdrawn its claim for unjust enrichment and negligent misrepresentation. Accordingly, those claims will no longer

---

[1]TSE argues that McDowell's motion to dismiss the original counterclaims should be denied as moot since TSE filed its Am. Counterclaim concurrently with its opposition papers. McDowell counters that in the interest of justice and judicial economy the motion to dismiss should be deemed directed to the allegations of the Am. Counterclaim. The Court agrees and will address the motion to dismiss based on the Am. Counterclaim.

be addressed in this motion. Thus the only counterclaims now pending for determination by this court are as follows: (1) Fraud (Count II); (2) Unfair and Deceptive Trade Practices (Count III); (3) Breach of the Covenant of Good Faith and Fair Dealing (Count IV); (4) Tortious Interference with Contract (Count V); (5) Tortious Interference with Prospective Economic Advantage (Count VI). I discuss these claims <u>seriatim</u>.

## **BACKGROUND**

Unless otherwise noted, the following facts are taken from TSE's Am. Counterclaim, including documents incorporated by reference or upon which TSE relied in drafting the Am. Counterclaim. TSE entered into a contract with McDowell to supply TSE's RAMP-75 brand amplifiers ("RAMP-75") as a component part of a U.S. defense contract.[2] TSE accepted three Purchase Orders with McDowell to deliver thousands of RAMP-75 brand amplifiers to McDowell to be sold to McDowell's ultimate customer. TSE was not able to perform pursuant to the Purchase Orders. For instance, there were delivery delays and McDowell rejected a number of defective amplifiers which had "abnormally high failure rate during testing and use." <u>See</u> Am. Counterclaim, ¶33. TSE's issues concerning failure rates and late deliveries required McDowell to demand adequate assurances of TSE's ability to perform on two separate occasions.

---

[2]McDowell also negotiated with TSE to purchase the rights to the RAMP-75 from TSE. However, the negotiations proved to be unsuccessful.

According to TSE, McDowell encouraged TSE to continue producing and shipping RAMP-75s to McDowell throughout the summer of 2008 and kept assuring TSE that it would be paid in full for all RAMP-75s that were accepted, in part by sending payment schedules. The payment schedules specified the dates that each TSE invoice would be paid in full by McDowell. The Am. Counterclaim alleges that on September 28, 2009, McDowell sent the last payment schedule knowing that TSE intended to rely on it in a pending settlement with Tricom Research, Inc. ("Tricom").[3] Indeed, the next day, the TSE-Tricom settlement was finalized in reliance on the McDowell payment schedule. On October 13, 2008, McDowell failed to pay TSE the amounts due according to the September 29, 2008 payment schedule.

## DISCUSSION

**I.    Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)**

**A.    Standard of Review**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" Fed.R.Civ.P. 8(a)(2). Although "a formulaic recitation of the elements of a cause of action will not do," see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (citation omitted), a complaint is sufficient, under Rule 8(a)(2), so long as it "'give[s] the defendant fair notice of what

---

[3]TSE alleges that when McDowell discovered in late 2007 that TSE's RAMP-75's were being manufactured under its contract with Tricom, McDowell began interfering with the TSE-Tricom contractual relationship in an effort to purchase directly from Tricom either the rights to the RAMP-75 or actual RAMP-75 units. In addition, TSE asserts that in early 2008 McDowell used the very dispute it had caused between Tricom and TSE as a pretense to threaten to cancel the McDowell-TSE contract.

the...claim is and the grounds upon which it rests[.]'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (second alteration in original).

Rule 12(b) permits a party, prior to filing a responsive pleading, to assert certain defenses by motion, including the defense that the party seeking relief has failed to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). In deciding a motion to dismiss a counterclaim pursuant to Rule 12(b)(6), the allegations in the claimant's pleadings are accepted as true and all reasonable inferences must be drawn in the claimant's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007); Arista Records LLC v. Lime Group LLC, 2007 WL 4267190, at *4-5 (S.D.N.Y.2007). However, mere "'conclusions of law or unwarranted deductions'" need not be accepted. See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore, James William & Jo Desha Lucas, Moore's Federal Practice ¶12.08, at 2266-69 (2d ed.1984)). Conclusory allegations "'will not suffice to prevent a motion to dismiss.'" See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002) (quotation omitted). In addition, the Court should not dismiss the counterclaim if the counterclaimant has stated "enough facts to state a claim to relief that is plausible on its face." See Twombly, 127 S.Ct. 1955, 1974 ; see also Katz v. Image Innovations Holdings, Inc., 2008 WL 762101, at *2 (S.D.N.Y.2008).

## B. Documents Properly Considered on a Motion to Dismiss

The Court may consider documents that are referenced in the counterclaim, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002); see also Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir.2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991); VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F.Supp.2d 435, 437 (S.D.N.Y.2001) (In deciding motion to dismiss for failure to state claim, court may consider documents referenced in complaint and documents that are in plaintiff's possession or that plaintiff knew of and relied on in bringing suit); Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 587 (S.D.N.Y.2006) (on a motion to dismiss, a court is entitled to consider the terms of any documents attached to or referenced in the complaint); Frontier-Kemper Constructors, Inc. v. American Rock Salt Co., 224 F. Supp. 2d 520, 525 (W.D.N.Y.2002) (Court's consideration of motion to dismiss for failure to state a claim is limited to the factual allegations in plaintiff's complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice

may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit).

When deciding a motion to dismiss, the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." See McCarthy, 482 F.3d at 191; accord Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir.2006). Accordingly, there are circumstances under which it is appropriate for a court to consider documents outside of the complaint on a motion to dismiss. For example, documents that are integral to the complaint, are partially quoted in the complaint, or were relied upon by plaintiff in drafting the complaint may be properly considered on a motion to dismiss. See Faulkner, 463 F.3d at 134. The court may also consider on a motion to dismiss documents of which it may take judicial notice. See Kramer, 937 F.2d at 771.

Here, the Am. Counterclaim expressly references the letters attached as exhibits A, C and D by McDowell in the affidavit in support of its motion to dismiss. In addition, McDowell attached exhibits E and F which were communications relied on by TSE in ¶¶ 52 and 56 of the Am. Counterclaim. Further, McDowell attached a complete copy of a complaint filed in a different action, which was referred to by TSE in this action. The Court finds that the Am. Counterclaim does incorporate these documents since they relate to the very issues referred to in the cited paragraphs and characterized in various paragraphs of the Am. Counterclaim. See Am. Counterclaim at ¶¶ 35, 40,

41, 46, 52 and 57. Thus, the Court finds that the documents attached to the affidavit in support of McDowell's motion to dismiss were documents relied upon by TSE and were "documents that [TSE] either possessed or knew about and upon which they relied in bringing the suit." See <u>Rothman v. Gregor</u>, 220 F.3d 81, 99-89 (2d Cir.2000) (citations omitted); <u>see</u> <u>also</u> <u>Cosmas v. Hassett</u>, 886 F.2d 8, 13 (2d Cir.1989). Accordingly, the Court will consider McDowell's exhibits for purposes of deciding this motion.

After the motion to dismiss filed by McDowell was fully briefed, TSE filed a Motion For Leave to Submit Additional Evidence in Opposition to Motion to Dismiss. <u>See</u> Docket #22. In its brief in support of its motion, TSE contends that the additional documents supporting its counterclaims were obtained "in discovery." <u>See</u> Br. at 1. "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir.2000) (internal quotation marks omitted). Federal courts have complete discretion to determine whether or not to accept submission of any material beyond the pleadings offered in conjunction with a motion to dismiss, and thus complete discretion in determining whether to convert the motion to one for summary judgment. <u>See</u> <u>Carione v. U.S.</u>, 368 F. Supp. 2d 186, 191 (E.D.N.Y.2005), reconsideration denied, 368

F. Supp. 2d 196 (E.D.N.Y.2005). The "mere attachment of affidavits or exhibits [however,]... is not sufficient to require conversion to a motion for summary judgment." See Salichs v. Tortorelli, 2004 WL 602784, at *1 (S.D.N.Y.2004) (citation omitted).

Here, the Court in its discretion finds that it is unnecessary to convert this motion to dismiss into a motion for summary judgment. In addition, the Court will not consider TSE's other submissions for purposes of deciding this motion, as those documents were not incorporated by reference or cited to in the Am. Counterclaim, and there is not sufficient indication that TSE relied upon the documents in commencing this action.[4] Accordingly, the Court excludes these documents attached to TSE's affidavit from consideration for purposes of deciding this motion and the motion for leave to submit additional documents is denied.

## II. **Choice of Law**

TSE argues that North Carolina law most likely applies. See TSE Br. at 5. However, TSE claims that since McDowell only argued that the claims should be dismissed based on New York law and failed to argue that the claims should be dismissed pursuant to North Carolina law, that McDowell's motion must fail. See id. at 6. Moreover, TSE argues that because the choice of law decision is fact-specific, it is premature for the Court to make the determination at this time.

---

[4]As mentioned above, TSE admits that these documents were obtained "in discovery," which presumably was after the filing of the Am. Counterclaim. Thus, the documents that TSE seeks to have the Court consider are neither documents referenced in the Am. Counterclaim, nor documents upon which the Am. Counterclaim solely relies. See Mathis v. United Homes, LLC, 607 F.Supp.2d 411, 419 (E.D.N.Y.2009).

McDowell contends that there is no substantive difference between New York and North Carolina law on the basic tenets of fraud, the covenant of good faith and fair dealing, tortious interference with contract and tortious interference with prospective economic advantage. See McDowell Reply Br. at 2. Both parties are in agreement that at this stage of the proceedings the Court need not determine whether the laws of North Carolina or New York apply. This Court need not decide at this juncture whether New York or North Carolina law applies to the substantive claims since I ultimately conclude that the laws do not differ as they apply to the facts of this case.

### III. <u>Fraud</u>

#### A. TSE's Fraud Claim Sounds in Breach of Contract

TSE contends that McDowell engaged in fraud because it had no present intent to pay all of the invoices itemized in the September 29, 2008 payment schedule at the time the payment schedule was sent and intended to deceive TSE with this false statement. See TSE Br. at 7. In addition, TSE claims it relied on the September 29 payment schedule to its detriment by continuing to incur costs to produce and ship additional RAMP-75s and by agreeing to settle with Tricom in reliance on the terms of McDowell's payment schedules. See id. TSE also contends that it was only when McDowell received the last shipment of RAMP-75s did it cease payment to TSE. See id. at 8.

The laws of New York and North Carolina are "substantively identical" regarding fraud. See <u>Krispy Kreme Doughnut Corp. v Advantage Group Enter., Inc.</u>, 2008 WL 5216227, at *3. Accordingly, to

state a claim for fraud in either jurisdiction, the plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc., 98 F.3d 13, 19 (2d Cir. 1996); S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996); see also Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Breeden v. Richmond Community College, 171 F.R.D. 189, 194 (M.D.N.C.1997) (citations omitted) ("to allege a claim for fraud...a party must plead...(1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage").

A party pleading fraud "must state with particularity the circumstances constituting fraud...." Fed.R.Civ.P. 9(b). To plead fraud with particularity, "the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir.1999) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994)); see also Breeden, 171 F.R.D. at 195 (quoting Liner v. DiCresce, 905 F.Supp. 280, 287 (M.D.N.C.1994)) (plaintiffs must set

out the "'time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby'"). "Allegations that are 'conclusory' or 'unsupported by assertions of fact' are insufficient to satisfy Rule 9(b)." <u>OSRecovery, Inc. v. One Groupe Int'l, Inc.</u>, 229 F.R.D. 456, 458 (S.D.N.Y.2005) (quoting and citing <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir.1986)).

McDowell moves to dismiss TSE's fraud claims on grounds that the fraud claims are duplicative of the breach of contract claims, and therefore may not be allowed to proceed under either New York or North Carolina law.[5] McDowell contends that because the allegations of fraud by TSE are not independent, are not wholly collateral to the parties' contractual obligations and all relate to duties that were owed under the contract, the allegations amount to no more than an alleged breach of contract. Accordingly, McDowell claims that TSE's fraud claims should be dismissed. While it is well established under New York law that a breach of contract will not ordinarily give rise to a tort claim, where the plaintiff alleges that the defendant breached a duty that was owed to the plaintiff independent of any

---

[5]McDowell also argues that TSE's fraud claim fails because it was pled with insufficient particularity and, thus, does not comport with Rule 9(b) of the Federal Rules of Civil Procedure. <u>See</u> Fed.R.Civ.P. 9(b) ("[I]n all averments of fraud..., the circumstances constituting fraud...shall be stated with particularity."). Courts in the Second Circuit have held that, to satisfy Rule 9(b), the plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." <u>Wurtsbaugh v. Banc Am. Sec., LLC.</u>, 2006 WL 1683416, *4 (S.D.N.Y.2006), (quotation omitted). Similarly, North Carolina courts construe the Rule 9(b) requirement to mean that the pleading party must set out the "time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby." <u>See</u> <u>Breeden</u>, 171 F.R.D. at 195 (quoting <u>Liner</u>, 905 F.Supp. at 287). Because the Court will dispose of TSE's fraud on the merits, it will not address whether TSE meets the pleading requirements set forth in Rule 9(b).

duty owed under the terms of the contract, such a claim may be allowed to proceed under a theory of fraud. See Agency Dev., Inc. v. MedAmerica Ins. Co. of NY, 327 F.Supp.2d 199, 206 (W.D.N.Y., 2004)(Larimer, J.)("a simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been violated.")(quoting Fleet Bank of New York v. Douglas-Guardian Warehouse Corp., 229 A.D.2d 962, 962, 645 N.Y.S.2d 384 (4th Dep't 1996).

Moreover, a fraud claim may be pursued simultaneously with a contract claim where the plaintiff can demonstrate that the defendant made "a fraudulent misrepresentation collateral or extraneous to the contract" or where the plaintiff seeks "special damages that are caused by the misrepresentation and unrecoverable as contract damages." Solutia Inc. v. FMC Corp., 385 F.Supp.2d 324, 342 (S.D.N.Y. 2005)(quoting Bridgestone, 98 F.3d at 20); see also Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir.2006) (Under New York law, general allegations that a defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim); New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318 (1995) (same). North Carolina law is similar. Where fraud allegations are raised in what is essentially a breach of contract case, the Court of Appeals for the Fourth Circuit has warned that an "attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent both with North Carolina law and sound commercial practice." See Strum v. Exxon Co., U.S.A., 15 F.3d 327,

329-30 (4th Cir.1994). The mere failure to carry out a promise in a contract cannot support a fraud action. Id. at 331.

In the instant case, the alleged misrepresentations all relate to matters that are the subjects of the parties contract. TSE's complaint that McDowell did not "intend to pay for shipment of goods that it accepted" under the terms of the parties' agreement, and that McDowell's submission of payment schedules "were false representations" are matters related to the contract. See Am. Counterclaim ¶¶82-84. If at all, any alleged misrepresentations describe McDowell's attempts to avoid payment under the contract. However, TSE's allegations do not show fraud that is collateral or extraneous to the contract. See Direct Inc. Partners Ag v. Cerberus Global Inv., LLC, 2008 WL 355467, at *9 (S.D.N.Y.2008). Further, the laws of both New York and North Carolina make clear that a cause of action for fraud does not lie where the alleged misrepresentation is merely a promise to carry out the terms of a contract. See Spellman v. Columbia Manicure Manuf. Co., 111 A.D.2d 320, 324 (2d Dept.1985) (holding that failure to fulfill promises to perform future acts is a breach of contract, not fraud); TSC Research, LLC v. Bayer Chemc. Corp., 552 F.Supp.2d 534, 544 (M.D.N.C.2007) (holding statement as to future events do not support a fraud claim).

TSE in essence asserts that McDowell allegedly confirmed that it would pay certain invoices, which it later withheld final payment. See Am. Counterclaim, ¶¶ 82-88. However, this is a claim for payment which impermissibly duplicates TSE's contract counterclaim. Even

13

accepting TSE's description of the payment schedules sent by McDowell as reassurances that McDowell would pay all amounts that had been or would be invoiced by TSE without making any claim or offset for damages, such statements are not sufficiently collateral to the parties' contract to support a fraud claim. In addition, even assuming that McDowell knew of TSE's settlement negotiation with Tricom and TSE relied on the September 29, 2008 payment schedule to settle the Tricom action, the alleged misrepresentation concern the parties' payment obligations pursuant to their contract and accordingly are part of the contract. Because the alleged misrepresentations are not collateral to the parties' contract, TSE has failed to state a cause of action for fraud.[6]

TSE alleges that McDowell promised future payments under the installment contract to entice TSE to provide further shipments of the RAMP-75s, even though McDowell had no intention of actually making the promised payments. See Am. Counterclaim ¶¶61-62. In addition, TSE asserts that had McDowell notified TSE of its true

_____

[6]TSE cited Uniform Constr. Servc., Inc. v. Bellsouth Telcoms., Inc., 594 S.E.2d 802, 808 (N.C.Ct.App. 2004) for the proposition "that the statement of an intention to perform an act, when no such intention exists, constitutes misrepresentation of the promisor's state of mind, an existing fact, and as such may furnish the basis for an action for fraud if the other elements of fraud are present[.]" However, TSE's reliance of the Unifour Constr. case is a misapplication of the law and is misplaced in this context. In that case, the North Carolina Court of Appeals reversed the trial court's dismissal of the plaintiff's claim for unfair or deceptive trade practices – not fraud – where the testimony during trial demonstrated that "despite representations to [the plaintiffs], [the defendants] had never intended to fulfill its agreement." See id. Put simply, plaintiffs demonstrated that at the time the contract was entered into, defendants did not intend to follow through with its terms. The law adopted in Unifour Constr. is similar to New York law that recognizes that a fraud claim may lie where there are specific facts to support the interference of an intention not to perform at the time the contract was entered into. See Lanzi v. Brooks, 54 A.D.2d 1057, 1958 (3d Dept. 1976), aff'd 43 N.Y.2d (1977). Here, TSE has failed to satisfy even this pleading burden when it concedes that as of September 26, 2008, McDowell "ha[d] been great at following the [payment] schedule sent" and yet bases its allegation that McDowell never intended to pay solely on the September 29, 2008 payment schedule. See Am. Counterclaim ¶¶56, Ex.A, 84-87.

14

intention not to pay TSE for future shipments of the RAMP-75s it would constitute a repudiation of the contract and entitle TSE to immediately suspend its performance under UCC §2-620(c) and N.C.Gen.Stat. §25-2-610(c). See TSE Br. at 9. Moreover, TSE contends that McDowell's misrepresentations allowed it to obtain more from TSE than it was entitled to under the contract and accordingly caused damages outside of the contract. See id. at 10. Further, TSE claims that McDowell's misrepresentations in the September 29, 2008 payment schedule were made to induce TSE to settle with Tricom in order that Tricom would release the final shipment of RAMP-75s to McDowell. See id. These misrepresentations, according to TSE were extraneous to the contract and caused TSE damages outside of its contractual damages thereby alleging a separate claim for fraud under New York law.

The Second Circuit has enunciated three exceptions to the general rule against allowing fraud claims that are related to breaches of contract: "to maintain a claim of fraud in such a situation, a plaintiff must either (i) demonstrate a legal duty separate from the duty to perform under the contract ...; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract ...; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." See Bridgestone, 98 F.3d at 20; Williams v. L.A. Models, Inc., 2008 WL 3304588 (S.D.N.Y.2008); see also Hotel Constructors, Inc. v. Seagrave Corp., 574 F.Supp. 384, 387-88 (S.D.N.Y.1983) (finding that plaintiff had made more than purely conclusory allegations that defendants

never intended to perform; plaintiffs had also alleged facts that defendants made promises that they knew at the time to be impossible of performance due to other concurrent contractual obligations).

After _Bridgestone_ it is clear that in order to be considered "collateral," the promise must be a promise to do something other than what is expressly required by the contract. See _Frontier-Kemper_, 224 F.Supp.2d at 528 (citations omitted). TSE has alleged no "collateral or extraneous" promises that McDowell made in addition to its promise to pay TSE pursuant to the payment schedules. The legal duty exception applies if the tort claims arise from a duty "separate from the duty to perform under the contract." See _Bridgestone_, 98 F.3d at 20; see also _Clark-Fitzpatrick_, 70 N.Y.2d at 389 ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated"). Here, TSE has failed to allege any facts indicative of a legal duty distinct from the duty to perform the contract, or any special damage that would not be recoverable as contract damages. See _Bridgestone_, 98 F.2d at 20. Thus, TSE has failed to state a claim for fraud, and McDowell's motion to dismiss the fraud counterclaim is dismissed.

**B.   Notice Regarding the Breach of Contact**

TSE also argues that the question of whether it breached the parties' contract is irrelevant because U.C.C. §2-607(3)(a) does not permit McDowell to withhold payment absent reasonable notice of breach, which TSE alleges McDowell failed to give. See TSE Br. at 11. TSE contends that the filing of the Complaint by McDowell on October

29, 2008 does not provide adequate notice under the U.C.C. See id. McDowell counters that TSE's Am. Counterclaim shows that TSE was aware that McDowell was ordering the RAMP-75s for a customer, who expressed dissatisfaction with their high failure rate. See McDowell Reply Br. at 5. In addition, McDowell contends that TSE concedes that after learning of McDowell's customers' dissatisfaction, McDowell constantly requested for adequate assurances regarding TSE's ability to perform under the parties' contract. See id., at 6.

Section 2-607 of the U.C.C. provides that a buyer that accepts goods must notify the seller of a breach within a reasonable time or be barred from any remedy. See N.Y. U.C.C. §2-607. The statute also expressly permits a buyer to not only pursue incidental and consequential damages, but "on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." See N.Y. U.C.C. §§2-715, 2-717. Here, TSE's argument that McDowell's Complaint cannot be considered notice of breach because it was filed months after McDowell allegedly gave TSE false assurances of payment is misplaced. Section 2-717 requires that the purchaser give notice to the buyer of its intent to withhold amounts owed, which may be provided in the form of a complaint filed by the purchaser. See Laish, Ltd. v. Jafora-Tabori, Ltd., 2006 WL 270250, at *5 (E.D.N.Y.2006) (citing Panda Capital Corp. v. Kopo Int'l, Inc., 242 A.D.2d 690, 692 (2d Dep't.1997)). In fact, TSE concedes that McDowell's payment for the RAMP-75s was not due until October 13,

2008. See Am. Counterclaim, ¶68. McDowell commenced this lawsuit against TSE on October 29, 2008 and as such it was just two weeks before McDowell stopped payment before an action was initiated against TSE. Accordingly, the Court finds that McDowell provided adequate notice of its intent to withhold payment under the case law and U.C.C.

### IV.  **North Carolina's Unfair And Deceptive Trade Practices Act**

McDowell moves to dismiss TSE's claim for unfair or deceptive trade practices under N.C. Gen.Stat. §75-1.1. TSE claims that it has properly pled the North Carolina Unfair and Deceptive Trade Practices Act ("UTPA") cause of action. See TSE Br. at 13-16. TSE alleges that McDowell not only breached its contract with TSE, it also sent the September 29, 2008 payment schedule, which promised payment to TSE even though no payment was forthcoming. See id., at 14. In addition, TSE claims that McDowell continued to promise payment to TSE even when it was confronted with its subsequent non-payment. See id. To establish a claim under North Carolina's UTPA, a claimant must show: (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to plaintiffs. See N.C. Gen.Stat. § 75-1.1(a); see also Canady v. Mann, 419 S.E.2d 597, 602 (1992), disc. review denied as improvidently allowed, 333 N.C. 569 (1993). "Ordinarily, under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act; however, aggravating circumstances, such as deceptive conduct by the breaching party, can

trigger the provisions of the Act." See <u>Cullen v. Valley Forge Life Ins., Co.,</u> 589 S.E.2d 423, 430 (N.C.Ct.App.2003) (internal quotation marks omitted).

In interpreting North Carolina's UTPA, the Fourth Circuit recognized that "unfairness inheres in every breach of contract when one of the parties is denied the advantage for which he contracted." <u>United Roasters, Inc. v. Colgate-Palmolive, Co.,</u> 649 F.2d 985, 992 (4th Cir.1981). Accordingly, even an intentional breach of a valid contract does not violate the statute. <u>Id.</u> The breach of contract must be characterized by some type of egregious or aggravating circumstance. <u>Norman Owen Trucking v. Morkoski</u>, 506 S.E.2d 267, 273 (N.C.Ct.App.1998). "Applicable aggravating circumstances include conduct of the breaching party that is deceptive." <u>Poor v. Hill</u>, 530 S.E.2d 838, 845 (N.C.App.Ct.1998). A trade practice is deceptive if it "has the capacity or tendency to deceive." <u>Johnson v. Phoenix Mut. Life Ins. Co.,</u> 300 N.C. 247, 265 (1980). It is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, <u>Lapierre v. Samco Dev. Corp.,</u> 406 S.E.2d 646, 650 (1991), and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. §75-1.1. <u>Mosley & Mosley Builders, Inc. v. Landin Ltd.,</u> 389 S.E.2d 576, 580, disc. rev. denied, 326 N.C. 801

(1990);[7] _Bartolomeo v. S.B. Thomas, Inc._, 889 F.2d 530, 535 (4th Cir.1989).

It appears from the pleadings and briefs of counsel that the gravamen of TSE's counterclaim is that McDowell's alleged failure to make the remaining payments based on the September 29, 2008 payment schedule constituted deceptive and misleading conduct and McDowell has thus committed an unfair trade practice. TSE fails to allege any acts beyond that of breach of contract, much less rising to the level of unfair or deceptive, or "substantial aggravating circumstances," which would sustain a claim for unfair trade practices. Therefore, TSE's UTPA claim in its Am. Counterclaim is dismissed[8] and McDowell's motion to dismiss the UTPA count under North Carolina law is dismissed.

## V. __Breach of the Implied Covenant of Good Faith and Fair Dealing__

"Implicit in every contract is a promise of good faith and fair dealing which is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would

---

[7]TSE relies on Mosley, in an attempt to show that McDowell's actions were deceptive. In Mosley, a landlord forcibly entered the tenant's premises and removed his personal property from the rented premises while there was an outstanding dispute between the parties as to whether the landlord could relocate the tenant to a new location. Id. at 580-81. The court held that, under these circumstances, a letter from the landlord, sent shortly prior to the dispute and wishing the tenant a profitable year, had the tendency to mislead and deceive. See id.

[8]TSE further alleges that Tricom's failure to inform TSE of RAMP-75 shipments sent directly to a McDowell affiliate while TSE and Tricom were negotiating a settlement and McDowell's promise to pay TSE based on the September 29, 2008 payment schedule with the intent that TSE would rely on the payment schedule to settle with Tricom are the sort of unlawful conduct that the UTPA is meant to govern. See TSE Br. at 15. However, neither Tricom nor the Mcdowell affiliate are parties to the current action and thus, allegations of third-party conduct cannot form the basis of a UTPA claim. See Tingley v. Beazer Homes Corp., 2008 WL 1902108, at *5 (W.D.N.C.2008); see also Mullinax v. Radian Guar., Inc., 311 F.Supp.2d 474, 481 ("Plaintiffs must demonstrate that the injury they have suffered was caused by the challenged conduct of Defendants, and not by the...action of some third party").

deprive the other party of the right to receive the benefits under their agreement." Skillgames, L.L.C. v. Brody, 1 A.D.3d 247, 252 (1st Dep't.2003) (internal citations and quotation marks omitted). The purpose of the implied covenant of good faith is to "further an agreement by protecting a promisee against breach of the reasonable expectations and inferences otherwise derived from the agreement. Such protection cannot exist in the absence of an underlying valid contract." Ari and Co., Inc., v. Regent Int'l Corp., 273 F.Supp.2d 518, 522 (S.D.N.Y.2003) (internal citations and quotation marks omitted). Therefore, "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and a breach of contract on the same facts...." Bay Fireworks, Inc., 359 F.Supp.2d at 266 (internal citations omitted); see also B. Lewis Prods., Inc. v. Maya Angelou, Hallmark Cards, Inc., 2005 WL 1138474, at *11 (S.D.N.Y.2005) (holding that because the covenant of good faith is "part and parcel" of the underlying contract, a party does not have a separate cause of action for breach of the covenant of good faith based on the same facts as the breach of contract claim).

McDowell moves to dismiss TSE's claim for breach of the implied covenant of good faith and fair dealing on the grounds that such a claim is duplicative of the claim for breach of contract and cannot be asserted where an affirmative breach of contract claim has been made for the same challenged conduct. See McDowell Br. at 13; McDowell Reply Br. 8. TSE contends that North Carolina law should apply to this cause of action and claims that North Carolina courts

recognize an independent cause of action for breach of the covenant of good faith and fair dealing. See TSE Br. at 16. While "some courts in North Carolina have considered good faith and fair dealing claims separate from breach of contract claims...the weight of North Carolina authority holds also that a claim for breach of the covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately." See B. Lewis Prod., 2005 WL 1138474, at *11 (citing Shalford v. Shelley's Jewelry, Inc., 127 F.Supp.2d 779, 787 (W.D.N.C.2000) and Polygenex Int'l, Inc. v. Polyzen, Inc., 515 S.E.2d 457, 461-62 (1999)); Mech. Indus. v. O'Brien/Atkins Assocs., P.A., 1998 U.S. Dist. LEXIS 5389, at *11 (M.D.N.C. Feb. 4, 1998) (noting that North Carolina recognizes a separate cause of action for breach of good faith and fair dealing only in limited circumstances involving special relationships between the parties, such as cases involving funeral services and insurance contracts).

The Court finds that, under either New York or North Carolina law, TSE has failed to adequately allege a distinct cause of action for breach of the implied covenant of good faith and fair dealing."[W]here the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is intrinsically tied to the damages allegedly resulting from the breach of contract, there is no separate and distinct wrong that would give rise to an independent claim." Ari and Co., 273 F.Supp.2d at 522 (noting that such claims

must be dismissed as redundant). In addition, TSE has not alleged that a special relationship exists between McDowell and TSE.

Moreover, TSE alleges that McDowell "never intended to pay TSE for the RAMP-75s after McDowell had received all of the shipments of RAMP-75s[.]" See Am. Counterclaim, ¶106. Further, TSE asserts that McDowell "used the dispute it caused between Tricom and TSE as a pretense to threaten TSE with cancellation of its contract and to attempt to reduce McDowell's payment obligations to TSE." See id., ¶ 107. "New York law imposes an implied covenant of good faith and fair dealing in all contracts, 'pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Peabody v. Weider Publications, Inc., 2006 WL 3802214, *5 (S.D.N.Y. Dec. 26, 2006)(quoting Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir.2006) (citation omitted)). However, in cases where "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged facts, simply seek the same...relief already claimed in a companion contract cause of action, [the allegations] may be disregarded as superfluous as no additional claim is actually stated." Hall v. Earthlink Network, Inc., 396 F.3d 500, 508 (2nd Cir. 2005); Peabody, 2006 WL 3802214 at *5. In the instant case, TSE's allegations that McDowell breached its duty of good faith and fair dealing merely restate the allegations supporting its claim for breach of contract.

As stated above, TSE alleges that McDowell misrepresented its intention or ability to pay for the RAMP-75s and in fact has not fully paid for the RAMP-75 amplifiers based on the September 29, 2008 payment schedule in accordance with the parties' contract. All of these allegations, however, are no different from allegations sought pursuant to or in connection with the contract, and accordingly TSE's claim for breach of the covenant of good faith and fair dealing does not state a separate cause of action from its cause of action for breach of contract. Accordingly, I grant McDowell's motion to dismiss Count Four of the Am. Counterclaim.

## VI. <u>Tortious Interference with Contract</u>

In Count Five of the Am. Counterclaim, TSE alleges that McDowell tortiously interfered with TSE's contractual relations with Tricom, a third party. "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" <u>Kirch v. Liberty Media Corp</u>, 449 F.3d 388, 401 (2nd Cir. 2006) (quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424, (1996)); <u>NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.</u>, 87 N.Y.2d 614, 620-21 (1996); <u>See also Robinson, Bradshaw, & Hinson, P.A. v. Smith</u>, 498 S.E.2d 841, 850 (N.C.App.2001); <u>United Lab v. Kuykendall</u>, 322 N.C. 643, 661 (1988)

("The elements of tortious interference with contract are: (1) a valid contract between plaintiff and a third person which confers upon plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification (5) causing actual damage to the plaintiff." (citing <u>Childress v. Abeles</u>, 240 N.C. 67, 84 (1954); <u>Filmar Racing, Inc. v. Stewart</u>, 541 S.E.2d 733, 738 (N.C.App.2001). To state a claim for tortious interference however, "the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose." <u>Alvord and Swift v. Stewart M. Muller Const. Co., Inc.</u>, 46 N.Y.2d 276, 281 (1978).

In the instant case, for purposes of this motion to dismiss, there appears to be no dispute that TSE has satisfied the following pleading requirements. First, TSE has alleged the existence of a contract between itself and Tricom for the production of RAMP-75s. <u>See</u> Am. Counterclaim, ¶111. Second, TSE has alleged that McDowell knew of the TSE-Tricom contract. <u>See</u> <u>id.</u>, ¶113. Third, TSE has alleged that Tricom breached its agreement with TSE and in fact sued Tricom for breach of the parties' contract. <u>See</u> <u>id.</u>, ¶40; <u>see also</u> <u>Tactical Support Equipment, Inc. v. Tricom Research, Inc.</u>, Case No. 08-CV-159 (E.D.N.C.). Finally, TSE has alleged damages resulting from the breach of contract that was allegedly procured by McDowell by,

among other things, claiming that it sustained damages with its legal battle with Tricom.[9]

McDowell however maintains that TSE has failed to state a claim for tortious interference with contract because it has not shown that McDowell "acted through improper means to induce a breach of contract." <u>See</u> McDowell Reply Br. at 9. In addition, McDowell contends that TSE has failed to come forward with facts showing that McDowell intentionally, and with malice, tortiously interfered with the contract between TSE and Tricom. <u>See</u> <u>id.</u> Further, McDowell argues that the evidence shows that Tricom's dispute with TSE concerned the ownership of the RAMP-75s being sold to McDowell and accordingly, any alleged conduct by McDowell to clarify who had ownership rights to a product McDowell was purchasing shows a legitimate business purpose. <u>See</u> <u>id.</u> at 10.

A [counter]defendant does not maintain the requisite knowledge or intent to tortiously interfere with a contract unless the [counter]defendant "intentionally commit[s] a harmful act without legal justification." <u>Childress</u>, 240 N.C. at 674-75. "The interference is 'without justification' if the defendants' motives ... were 'not reasonably related to the protection of a legitimate business interest' of the defendant." <u>Privette v. Univ. of North Carolina</u>, 385 S.E.2d 185, 190 (1989) (quoting <u>Smith v. Ford Motor</u>

---

[9]TSE's lawsuit with Tricom was concluded with Tricom dismissing its claims with prejudice, which led to RAMP-75s being shipped directly from Tricom to McDowell and its affiliates and which led to damages that McDowell allegedly suffered and is seeking from TSE in its complaint in this action.

Co., 289 N.C. 71, 94 (1976)). Accordingly, the Courts have held that the complaint must admit of no motive for interference other than malice. See Privette, 385 S.E.2d at 191; Sides v. Duke Univ., 328 S.E.2d 818, 829 (1985), rev'd on other grounds, Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329 (1997).

The Court notes that TSE's Am. Counterclaim has alleged that McDowell approached Tricom by January 2008 and intentionally induced it to cease shipment of the RAMP-75s to TSE thereby violating the contract with TSE in order to be able to produce and ship the RAMP-75s directly to McDowell and its affiliates. See Am. Counterclaim ¶¶30-31. The Am. Counterclaim further alleges that McDowell's interference with the TSE-Tricom relationship led to the deterioration of the business relationship. See id., ¶¶39-40. TSE thus claims that McDowell's conduct was "willful, oppressive and malicious, and evidenced a wanton disregard for TSE's rights and property." See id., ¶118. The Court concludes however upon a review of the Am. Counterclaim that TSE has not alleged a factual basis to support the claim of malice. TSE has failed to allege that McDowell intentionally procured the breach of a contract held by TSE with Tricom, a third party, and therefore has failed to state a cause of action for tortious interference with contract. Accordingly, I grant McDowell's motion to dismiss Count Five of TSE's Am. Counterclaim.

### VII. Tortious Interference with Prospective Economic Advantage

TSE alleges in Count Six of the Am. Counterclaim that McDowell interfered with prospective economic advantage. To make out a claim

for tortious interference with prospective economic advantage, TSE "must show that [McDowell] induced a third party [Tricom] to refrain from entering into a contract with [TSE] without justification. Additionally, [TSE] must show that the contract would have ensued but for [McDowell's] interference." Daimlerchrysler Corp. v. Kirkhart, 561 S.E.2d 276, 286 (N.C.App.2002) (internal citation omitted) (citing Cameron v. New Hanover Mem'l Hosp., 293 S.E.2d 901, 917 (N.C.App.1982)). Further, North Carolina courts have provided that plaintiffs must show that a defendant "acted with malice and for a reason not reasonably related to the protection of a legitimate business interest...." Cameron, 293 S.E.2d at 916, (citing Smith v. Ford Motor Co., 221 S.E.2d 282, 296 (1976)).

TSE argues that McDowell acted without justification and its malicious action is evidenced by inducing Tricom to instigate a dispute with TSE where Tricom claimed ownership of the trademark rights to the RAMP-75s. In addition, TSE claims that McDowell's intentions with respect to this issue were motivated by a desire to purchase the RAMP-75 trademark rights from Tricom or to directly purchase RAMP-75s produced by Tricom. See TSE Br. at 24. McDowell discovered that Tricom was TSE's contract manufacturer and as such McDowell engaged in conduct to "cut out the middle man" in its production chain. See id. Accordingly, TSE alleges that McDowell communicated with Tricom and induced it to abandon its existing business relationship with TSE, including abandoning prospective contracts for production of the RAMP-75. See Am. Counterclaim, ¶¶31, 32, 39-40. The Court finds, for similar reasons mentioned above in

TSE's claim for tortious interference with contract (see Point VI above), TSE's assertions that McDowell induced Tricom to refrain from entering into a contract with TSE, which would have ensued but for McDowell's interference, do not state a claim for which relief may be granted.

Thus, because TSE has not alleged that McDowell acted solely out of malice towards McDowell without justification, I grant McDowell's motion to dismiss Count Six of TSE's Am. Counterclaim.

## CONCLUSION

For the reasons set forth above, I grant McDowell's motion to dismiss. TSE's motion for leave to submit additional documents is denied. The court finds the following:

(1) TSE's Second Cause of Action (Fraud) is dismissed;

(2) TSE's Third Cause of Action (Unfair and Deceptive Trade Practices) is dismissed;

(3) TSE's Fourth Cause of Action (Breach of the Covenant of Good Faith and Fair Dealing) is dismissed;

(4) TSE's Fifth Cause of Action (Tortious Interference with Contract) is dismissed;

(5) TSE's Sixth Cause of Action (Tortious Interference with Prospective Economic Advantage) is dismissed;

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           September 4, 2009